No. 25-5952

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

MILES BLACK and MELISSA BLACK,
on behalf of themselves, and all other persons similarly situated,

Plaintiffs-Appellants,

vs.

IEC GROUP, INC., d/b/a AMERIBEN

Defendant-Appellee.

---

# REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

On Appeal from the United States District Court for the District of Idaho,
Hon. Amanda K. Brailsford, presiding

---

THOMAS A. ZIMMERMAN, JR.
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. WASHINGTON STREET, SUITE 1220
CHICAGO, IL 60602
(312) 440-0020

MARC E. DANN
BRIAN D. FLICK
MARITA I. RAMIREZ
**DANNLAW**
15000 MADISON AVENUE
LAKEWOOD, OH 44107
(216) 373-0539

BONNER C. WALSH (9646)
**WALSH PLLC**
1561 LONG HAUL ROAD
GRANGEVILLE, ID 83530
(541) 359-2827

*ATTORNEYS FOR PLAINTIFFS-APPELLANTS*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The Data Breach Caused the Blacks to Suffer and Injury in Fact ........ 3

1. Ameriben's Improper Factual Assertions That Should Not Be Accepted At the Pleading Stage Do Not Diminish the Real and Credible Risk of Identity Theft ........ 3

2. The Blacks Suffered a Concrete Injury to their Privacy Rights . 8

a. The Blacks' Injury Is Not Dependent On Whether a Statute Creates a Private Right of Action ........ 8

b. The Blacks' Invasion of Privacy Injury Does Not Depend on the State of Mind of a Bad Actor ........ 10

B. The Judgment Should Not Be Affirmed on Alternative Grounds That Were Never Covered in the Trial Court's Decision ........ 13

1. ERISA Preemption Does Not Apply ........ 13

2. The FAC States a Claim for Negligence ........ 15

a. The Blacks Have Alleged a Duty to Safeguard Their Sensitive Information ........ 16

b. The Blacks' Claims Are Not Subject to the Economic Loss Doctrine ........ 18

3. The Blacks' Negligence Per Se Claim Is Well Pled ........ 20

4. The Blacks State a Claim for Breach of Contract ........ 21

5. The Blacks State a Claim for Breach of Implied Contract ........ 23

6. The Blacks State a Claim for Breach of Fiduciary Duty ..........24

7. The Blacks State a Claim for Unjust Enrichment .....................25

8. The Blacks State a Claim Under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") .................................25

a. The FDUTPA applies to the Data Breach with Respect to the Blacks and the Florida Subclass ...........................25

b. The Blacks Allege Actual Damages Under the FDUTPA .......................................................................26

III. CONCLUSION .........................................................................27

## TABLE OF AUTHORITIES

***Cases***

*Aardema v. U.S. Diary Sys., Inc.*,
215 P.3d 505 (Idaho 2009) ....................18, 19

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)....................14, 15

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017)....................6, 7

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*,
No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 2, 2012) ....................26

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024, 2019 WL 2568799 (N.D. Cal. 2019) ....................18

*Bettwieser v. N.Y. Irrigation Dist.*,
297 P.3d 1134 (Idaho 2013) ....................23

*Brian and Christie, Inc. v. Leishman Elec., Inc.*,
244 P.3d 166 (Idaho 2010) ....................18

*Bridge Tower Dental, P.A. v. Meridian Computer Ctr., Inc.*,
272 P.3d 541 (Idaho 2012) ....................17

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997)....................13

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ....................18

*Doe v. Northern California Fertility Medical Center*,
No. 22-cv-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024)........10

*Farmer v. Humana, Inc.*,
582 F. Supp. 3d 1176 (M.D. Fla. 2022)....................27

*Flores-Mendez v. Zoosk, Inc.*,
No. C 20-04929-WHA, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021)..................5

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*,
660 F.3d 1102 (9th Cir. 2011) ..........................................................................14

*F.T.C. v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) ..............................................................................20

*GSN Cap., LLC v. Shoshone City & Rural Fire Dist.*,
541 P.3d 703 (Idaho 2024) ...........................................................................17, 19

*Jones v. Kootenai County Title Ins. Co.*,
873 P.2d 861 (Idaho 1994) ................................................................................24

*Harrington v. Madison Cnty.*,
No. CV-21-15-BU-BMM, 2021 WL 5770299 (D. Mont. Dec. 6, 2021).............9

*In re Ambry Genetics Data Breach Litigation*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)...................................................11, 19, 21

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)....14, 22

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022).................................................................22

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) .......................................................11

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal 2020)................................................................22

*In re: Premera Blue Cross Customer Data Sec. Breach Litig.*,
No. 3:15-MD-2633-SI, 2017 WL 539578 (D. Or. Feb. 9, 2017) .......................14

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284, 2020 WL 2214152 (S.D. Cal. 2020) ........................19, 23

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) ....................................................................1

*Jackson v. Loews Hotels, Inc.*,
No. EDCV18827DMGJCX, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ........7

*Jennings v. Stephens*,
574 U.S. 271 (2015)..........................................................................................13

*Meyer v. Christie*,
No. 07-2230-JWL, 2007 WL 3120695 (D. Kan. Oct. 24, 2007).......................22

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019)..........................................................................12

*Northstar Fin. Advisors Inc. v. Schwab Investment*s,
779 F.3d 1036 (9th Cir. 2015) ......................................................................23

*Orlando Health, Inc. v. HKS Architects, Inc.*,
792 F. Supp. 3d 1298 (M.D. Fla. 2025)..........................................................26, 27

*Oswald v. Costco Wholesale Corp.*,
473 P.3d 809 (Idaho 2020)...........................................................................19, 20

*Patterson v. Med. Rev. Inst. of Am., LLC*,
No. 22-CV-00413-MMC, 2022 WL 2267673 (N.D. Cal. June 23, 2022)............7

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
946 F.3d 1100 (9th Cir. 2020) ......................................................................13

*Remijas v. Neiman Marcus Group, LLC*,
794 F.3d 688 (2015)......................................................................................13

*Rife v. Long*,
127 Idaho 841 (1995).....................................................................................16

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025)..........................................................................9

*Stasi v. Inmediata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 11

*Stearns v. Williams*,
240 P.2d 833 (Idaho 1952) .......... 24

*Thompson v. Pike*,
838 P.2d 293 (Idaho 1992) .......... 23

*Turpen v. Granieri*,
985 P.2d 669 (Idaho 1999) .......... 16

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989) .......... 10

*Wolford v. Tankersley*,
695 P.2d 1201 (Idaho 1985) .......... 25

*Yellowstone Log Homes, LLC v. City of Rigby*,
173 Idaho 288 (2023) .......... 21

***Statutes and Rules***

Fed. R. Civ.P. 12(b) .......... 1, 3, 13

45 C.F.R. § 164.402(2) .......... 2

Fla. Stat. §§ 501.201, *et seq.* .......... 25

# I. INTRODUCTION

Article III concrete injury in data breach cases is influenced by two criteria: (1) the nature of the information that was subject to the data breach and (2) the context of the data breach. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018). At the pleading stage, most of the key facts relating to both criteria are within the exclusive knowledge of the data breach defendant.

The issue in this appeal is whether, in making that assessment on a facial attack under Rule 12(b)(1), a trial court should accept a defendant's characterizations in its data breach notification letter to dismiss a case for lack of standing before the defendant's assertions can be tested, investigated, and contextualized. It is not proper for Defendant-Appellee IEC Group, Inc. d/b/a Ameriben's ("Ameriben") (or any business) to win a dismissal "at the gate" (Ameriben's Brief at 21) with its carefully crafted statements in its data breach notification letter designed to avoid responsibility for its actions.

In this case, Ameriben's objective actions (as opposed to its words) support Plaintiffs Miles and Melissa Blacks' (the "Blacks") concrete injury. Ameriben explains in its brief that after the Data Breach, "rather than risk" scrutiny under HIPAA for causing the Data Breach, Ameriben provided the Blacks notice of the Data Breach. Ameriben's Brief at 13–14. As the Blacks explain in their Opening Brief, such notice under HIPAA is required, unless there is "a low probability that

the protected health information has been compromised." Opening Brief at 20; 45 C.F.R. § 164.402(2). Baked into whether a "low probability" is established are two (of four) criteria: namely, "the nature and extent of the PHI involved, including the types of identifiers and the likelihood of reidentification" and "the unauthorized person who used the PHI or to whom the disclosure was made." 45 C.F.R. § 164.402(2).

The Blacks received the Data Breach notification letter from their health plan administrator that possesses nearly all of their personally identifiable, financial, and health-related Sensitive Information. Ameriben's letter inadequately informed the Blacks about the Data Breach and advised them to protect their identity, to watch their health records for anything that does not look right, and to place credit freezes and fraud alerts on their credit reports—the kinds of measures one would take if their identity was at risk of being stolen.

Ameriben now claims it never really meant any of the warnings it put in its notification letter because there purportedly was no real chance that the Blacks' identities could be stolen. Ameriben's attempt to foist the risk, and costs of mitigating that risk, onto the Blacks should not prevail before the Blacks even have a chance to investigate the circumstances of the Data Breach themselves. The First Amended Complaint ("FAC") adequately alleges that the Blacks were injured by Ameriben and have standing.

Ameriben's arguments that the trial court should have granted its motion to dismiss under Fed. R. Civ. P. 12(b)(6) are not before the Court. The trial court concluded (incorrectly) that it lacked jurisdiction and did not reach these issues, and Ameriben did not file a cross-appeal to preserve these issues. But, if the Court wishes to decide these issues in the first instance, the Court should deny Ameriben's motion to dismiss in its entirety.

## II. ARGUMENT

### A. The Data Breach Caused the Blacks to Suffer an Injury in Fact

#### 1. Ameriben's Improper Factual Assertions That Should Not Be Accepted At the Pleading Stage Do Not Diminish the Real and Credible Risk of Identity Theft

Stripping away Ameriben's self-interested statements about the Data Breach and considering only the objective facts from the Blacks' perspective, the FAC pleads a real and credible risk of identity theft and harm, making the Blacks' past and future expenditures in time and money to avoid or reduce the risk redressable. While the Court can acknowledge that the data breach notification letter said what it said, the Court should not accept that what the letter says about the Data Breach was true and, on that basis, grant the motion to dismiss. Ameriben's statements in the notice letter are designed to minimize Ameriben's conduct that caused the Data Breach, the scope and severity of the Data Breach, and the risk to the Blacks.

The following disputed and unsupported statements should not form the basis of the Court's decision on a motion to dismiss:

a. Ameriben characterizes the Data Breach as "the inadvertent inclusion of some of [the Blacks'] personal information in one Ameriben employee's email to one or more other Plan members." Ameriben's Brief at 7–8. Ameriben provides no support for the assertion that the disclosure was inadvertent, does not specify what data fields comprise "some of" [the Blacks'] personal information, and fails to detail the identities of the email recipients. The FAC alleges that "the full extent of the types of Sensitive Information, the scope of the breach, and the root cause of the breach [are] all within the exclusive control of [Ameriben]." FAC ¶ 7, ER-21.

Ameriben exposed, at a minimum, sufficient information to commit identity theft to "malicious and criminal actors." FAC ¶¶ 17, 33–58, ER-24, 27–35. Because the Blacks were not present during the Data Breach, discovery is necessary to inquire into the context and circumstances under which an Ameriben employee ostensibly sent a single email containing an Excel spreadsheet of Sensitive Information relating to thousands of individuals. Without discovery it is not even possible to know what occurred in July 2023 that instigated Ameriben to search its stored files to find an illicit email sent in December 2022? As one court observed, "virtually all of the details that defendants insist on are in possession of the defendants, and not in

possession of plaintiff. It is unreasonable for defendant to insist that the details be laid out in the initial complaint." *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929-WHA, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021).

b. Ameriben asserts that "[t]he information at issue here ***is limited to*** first and last names, tracking and claim numbers, provider names, dates of service, and amounts billed or paid." Ameriben's Brief at 9. However, the notification letter did not say that. Rather, the letter stated (and more importantly the FAC alleged) that the exposed Sensitive Information *included*—not "limited to"—certain claims and treatment-related data. In addition, the FAC alleges that much more was disclosed, or put at risk of disclosure, including universally recognized identity theft fodder such as Social Security numbers, financial information, and personally identifying information. FAC ¶ 21, ER-25. The letter failed to reassure the Blacks that none of their highly Sensitive Information was taken. To the contrary, it advised the Blacks to take the same precautionary measures—such as to monitor explanations of benefits, credit reports, and accounts for unauthorized activity—just as if highly Sensitive Information was taken by criminals. The Blacks did nothing to contribute to the Data Breach—Ameriben did. The Blacks should not be required to bear all of the costs and risks associated with Ameriben's unlawful conduct.

c. Ameriben asserts that "the spreadsheet was filtered to include only the data for the member requesting the data. Thus, both the sender and

the recipient believed only the recipient's information was involved." Ameriben's Brief at 13. Yet Ameriben is the only entity that knows the identities of the senders and recipients, and on what basis it is making assertions about what these people believed. And even if the spreadsheet may have been filtered, this does little to diminish the likelihood that the information was or will be viewed in the future. It is immediately apparent that a spreadsheet is filtered when viewing it because the row numbers remain visible. A hacker who gains access to one of the file recipient's email inbox need only view the file size and not even open the file to understand that the file contains a significant amount of Sensitive Information.

Ameriben attempts to distinguish *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017), because *Attias* involved exposure of subscriber identification numbers, whereas the Ameriben Data Breach involved unique tracking numbers, claim numbers, provider identities, and amounts billed and owed. Ameriben also asserts, incorrectly, that the FAC does not allege that Social Security numbers and other financial information were compromised. Indeed, the FAC alleges the Sensitive Information consisted of Social Security numbers and other information Ameriben was entrusted to safeguard. FAC ¶¶ 7, 11, 21, ER-21–23, 25.

Both here and in *Attias*, the prospect of an identity thief using the exposed information to pretend to be the owner of that information is plausible to withstand a motion to dismiss. Only providers and patients should have this information, so

the risk of identity theft with any one piece of it is apparent. Ameriben admits the Sensitive Information exposed "relate[s] to specific procedures" the Blacks underwent. Ameriben's Brief at 10. That makes it far more sensitive, offensive, and dangerous than merely the subscriber identification numbers in *Attias*. There is no dispute that HIPAA deems the Sensitive Information to be sufficiently sensitive to warrant protection under the law. That single fact should suffice to establish that the nature of the Sensitive Information exposed in the Data Breach was highly sensitive.

Ameriben's reliance on *Patterson v. Med. Rev. Inst. of Am., LLC*, is misplaced because in that case the defendant submitted an undisputed affidavit attesting that "none of information about [the plaintiff] potentially exposed in the data breach was sufficiently sensitive to create a credible risk of future fraud or identity theft" and that the hackers returned the data after a ransom was paid. No. 22-CV-00413-MMC, 2022 WL 2267673, at *2–3 (N.D. Cal. June 23, 2022). Here, on the other hand, the FAC alleges that the exposed information included, but was not limited to, a set of Sensitive Information; Ameriben did not submit affidavits; the FAC alleges that additional Sensitive Information was potentially exposed; and the Blacks are disputing Ameriben's characterization of the Data Breach as a limited, accidental disclosure.

Ameriben's mention of *Jackson v. Loews Hotels, Inc.*, is less persuasive because in that case, there was no longer a risk of harm to the plaintiff because "she

closed or modified her accounts to mitigate the impact of the data breach." No. EDCV18827DMGJCX, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019). The other non-financial information consisted of name, phone number, email address (without the password), and mailing address. *Id.* at *4. The sensitivity of that information is not at all like the treatment-specific health-related information that is unquestionably exposed in this Data Breach.

Ameriben's arguments in this lawsuit that "it is unreasonable to infer the data will be misused" (Ameriben's Brief at 15) conflicts with what Ameriben said in its notification letter to the Blacks. The letter informed the Blacks of an unauthorized disclosure of their claims and healthcare treatment information, and it told the Blacks to take steps to protect their identities from unauthorized uses. Given what the Blacks were told and what they could reasonably infer from Ameriben's letter, their mitigation efforts and other injuries were completely reasonable and support their standing.

### 2. The Blacks Suffered a Concrete Injury to their Privacy Rights

#### a. The Blacks' Injury Is Not Dependent On Whether a Statute Creates a Private Right of Action

Ameriben argues that HIPAA lacks a private right of action for patients to enforce patient privacy rights. Critically, Ameriben does not dispute that HIPAA creates and defines rights to confidentiality over the Sensitive Information (whatever

it ultimately constitutes) here. HIPAA does not remove common law privacy rights. HIPAA clarifies them by identifying that the Sensitive Information exposed in the Data Breach was sufficiently sensitive and was supposed to be confidential. As evidenced by HIPAA, the Blacks had an expectation that Ameriben would maintain the confidentiality of their Sensitive Information. Ameriben harmed them when it disclosed their Sensitive Information unlawfully. Common law claims may proceed based on unauthorized disclosures of health care information in recognition of the fact that common law claims "encourage HIPAA compliance." *Harrington v. Madison Cnty.*, No. CV-21-15-BU-BMM, 2021 WL 5770299, at *2 (D. Mont. Dec. 6, 2021).

Ameriben argues that the exposed Sensitive Information is not the kind of information that can be used for identity theft, but it does not contend that the information is not subject to HIPAA or that its confidentiality ought not to have been preserved. Thus, for the categories of Sensitive Information everyone agrees was exposed in the Data Breach, policymakers have concluded that the information is sufficiently sensitive to warrant protections under the law. And in assessing whether an intangible injury amounts to a concrete injury, a "close analogue exists when the alleged and traditionally recognized harm are similar in "kind" rather than "degree." *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025). The Data Breach here is identical in kind to injuries that traditionally form the basis of a lawsuit in

American courts and, at best, Ameriben's arguments only go to the degree of similarity of the harm. But this is not a gateway issue preventing this Court from exercising jurisdiction.

#### b. The Blacks' Invasion of Privacy Injury Does Not Depend on the State of Mind of a Bad Actor

There is little to differentiate this case from the various other cases decided by courts in the Ninth Circuit that find Article III standing on a motion to dismiss by unauthorized disclosure of confidential information alone. Ameriben asserts that the Data Breach in this case was not intentional and that this is the distinguishing feature from these cases. However, Supreme Court cases "establish that whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 771 (1989). Furthermore, the procedural posture makes it inappropriate at this stage to accept Ameriben's assertions that the Data Breach was "not intentional." Ameriben's reading of the cases is also incorrect.

*Doe v. Northern California Fertility Medical Center*, No. 22-cv-01861-DAD-JDP, 2024 WL 246178, at *4 (E.D. Cal. Jan. 23, 2024), concluded that the defendant's unauthorized "release of highly personal information" (which amounted to little more than the fact that the plaintiff was defendant's patient) constituted an intrusion upon seclusion-like injury that satisfied the concrete injury requirement of Article III.

*Stasi v. Inmediata Health Group Corp*. involved a defendant that posted or allowed access to disclosure of medical information online. 501 F. Supp. 3d 898, 909 (S.D. Cal. 2020). There was no discussion of intent. Instead, the court reasoned that the injury was just as concrete as violations of other privacy-related statutes recognized in the Ninth Circuit and that it bore a close relationship to harm that tradition regards as providing the basis for a lawsuit. *Id*. at 910.

*In re Ambry Genetics Data Breach Litigation* found standing and denied a motion to dismiss the plaintiff's invasion of privacy cause of action, recognizing that a data breach involving medical information (as opposed to, say, Social Security numbers) is more likely to constitute an egregious breach of social norms that is highly offensive. 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021). That egregious breach of social norms is the same or similar whether it is a disclosure to a hacker or a voluntary, unauthorized disclosure to what could end up being, as here, 74,000 individuals, some of whom may be the Blacks' co-workers, supervisors, and subordinates. *See* FAC ¶ 7, ER-21–22. Indeed, a voluntary disclosure from a legitimate business like in this Data Breach is far worse, for the recipients and black-market purchasers can be more assured that the data is authentic.

*In re Facebook, Inc., Consumer Privacy User Profile Litigation* rejected the defendant's argument that a bare privacy violation without a credible risk of real world harm was not an Article III injury. 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).

Based on these cases, the Blacks are not required to show a risk of identity theft once they have shown a violation of their right to privacy.

*Nayab v. Capital One Bank (USA), N.A.* acknowledges that a person can suffer a concrete injury once an unauthorized recipient "obtains" private information because the person is "deprived of the right to keep private the sensitive information about his or her person" and this injury does not depend on publication or the recipients' use of the private information. 942 F.3d 480, 492–93 (9th Cir. 2019). The Blacks were deprived of this right to keep their Sensitive Information private.

Finally, Ameriben suggests that denying its motion to dismiss will "discourage companies from providing notice of potential data breaches." Ameriben's Brief at 14. The law sets forth specific standards for when a notification is required. Legal compliance provides all the encouragement that is needed. On the other hand, crediting Ameriben's characterization of the Data Breach in dismissing the case now teaches businesses and their lawyers how to draft data breach letters that highlight only favorable facts in order to avoid responsibility. It would foster an atmosphere where notification letters are self-serving, unhelpful, and dismissive of the true risks consumers may face, and would tend to defeat the purpose of laws requiring data breach notification in the first place. Recognizing the Blacks' concrete injuries does not result in "automatic liability"—just equal access to the facts that pertain to the disposition of the Blacks' Sensitive Information. Ameriben can put this Data Breach

behind it once the lawsuit resolves; the Blacks will deal with the consequences of their Sensitive Information being exposed for far longer.

### B. The Judgment Should Not Be Affirmed on Alternative Grounds That Were Never Covered in the Trial Court's Decisions

The district court dismissed for lack of standing and expressly declined to address Ameriben's Rule 12(b)(6) arguments. Because those issues were not decided below and may involve factual development and legal analysis not yet undertaken, the Court should not decide in the first instance Ameriben's Rule 12(b)(6) dismissal arguments. *See Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020).

In addition, Ameriben did not file a cross-appeal, so it cannot seek an affirmance of the trial court's dismissal under Rule 12(b)(1), based on Rule 12(b)(6). *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 697 (2015) (quoting *Jennings v. Stephens*, 574 U.S. 271, 276 (2015)) ("an appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary."). Nevertheless, the Blacks respond to Ameriben's arguments below, but urge the Court not to decide them.

#### 1. ERISA Preemption Does Not Apply

"In order to evaluate whether the normal presumption against pre-emption has been overcome in a particular case," the Court must consider "the objectives of the ERISA statute as a guide." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520

U.S. 806, 813–14 (1997). ERISA was enacted in order to provide "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

ERISA preempts state law claims brought by a participant or beneficiary of an ERISA plan "where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated." *Id.* at 210. Because this two-prong test is in the conjunctive, a state-law cause of action is preempted only if both prongs of the test are satisfied. *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011).

Courts deciding whether state law claims against health insurers and administrators for their failures in data security consider the claims *not* to be preempted. *See In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2017 WL 539578, at *22 (D. Or. Feb. 9, 2017); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *47 (N.D. Cal. May 27, 2016). Of the numerous mentions of the term "benefit" in ERISA, *none* suggests that protecting Sensitive Information should be considered an ERISA benefit. *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *47 (emphasis in original). Ameriben's obligations to preserve the confidentiality of the Sensitive Information and its obligations to provide ERISA benefits to beneficiaries of

employer-sponsored plans arise from separate laws, duties, and contractual documents. Ameriben's obligations to protect the Sensitive Information are owed directly to the Blacks. They are not obligations to provide plan benefits to beneficiaries through a contract with the insured employers. Ameriben's obligations to safeguard the Sensitive Information last as long as Ameriben retains possession of the Sensitive Information, even if Ameriben retains the Sensitive Information after the Blacks are no longer beneficiaries of the plans. The duties at issue arise from generally applicable tort, contract, and privacy law, not from the terms of the ERISA plan itself. Resolution of the Blacks' claims does not require interpreting plan provisions, determining eligibility for benefits, or enforcing rights under the plan. Rather, the claims concern Ameriben's independent obligation to safeguard confidential information entrusted to it. Accordingly, the claims do not "derive entirely from the particular rights and obligations established by the benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004). ERISA certainly does not suggest that Ameriben ought to be afforded a special exemption from generally applicable data security requirements.

### 2. The FAC States a Claim for Negligence

Ameriben argues that the Blacks have not alleged Ameriben owes them a duty to safeguard their Sensitive Information, and the economic loss doctrine bars the Blacks from recovering economic damages.

#### a. The Blacks Have Alleged a Duty to Safeguard Their Sensitive Information

Every person has a "duty to exercise ordinary care to 'prevent unreasonable, foreseeable risks of harm to others.'" *Turpen v. Granieri*, 985 P.2d 669, 672 (Idaho 1999). The Idaho Supreme Court recognizes seven factors to consider when deciding whether a duty exists: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Rife v. Long*, 127 Idaho 841, 846 (1995). The FAC pleads facts that meet these factors. Data Breaches are foreseeable, and industry custom is to adopt measures to prevent the unauthorized disclosure of Sensitive Information. FAC ¶ 41, ER-30. Ameriben is the only entity that can control what steps it takes to protect Sensitive Information; statutory law and regulations impose duties on Ameriben to protect the Sensitive Information; and insurance is available to cover the risks of data breaches. FAC ¶¶ 33–46; 59–63, ER-27–31, 36–39. All of the factors support finding a duty of care under these circumstances.

Indeed, in a somewhat analogous circumstance, the Idaho Supreme Court, in addressing a data loss case, held that the "scope of the bailment included not only

the machine [storing the data], but all of its contents, including the data contained on the mirrored hard drive." *Bridge Tower Dental, P.A. v. Meridian Computer Ctr., Inc.*, 272 P.3d 541, 546 (Idaho 2012). Thus, when a computer equipment vendor accidentally erases data, the vendor bears the burden of proving the data loss was not the result of negligence. *Id*. Idaho law recognizes a duty of care when a data owner places the data in the care of another.

"Even when an affirmative duty generally is not present, a legal duty may arise if one voluntarily undertakes to perform an act, having no prior duty to do so." *GSN Cap., LLC v. Shoshone City & Rural Fire Dist.*, 541 P.3d 703, 715 (Idaho 2024). Such an assumed duty arises when: (1) one previously has undertaken to perform a voluntary undertaking; (2) others are relying on the continued performance of the service; and (3) it is reasonably foreseeable that legally-recognized harm could result from failure to perform the undertaking. *Id*. at 357.

Ameriben owed a duty to the Blacks to take reasonable care in the handling of their Sensitive Information. Ameriben voluntarily accepted the responsibility of maintaining the Sensitive Information. Ameriben took custody and controlled the Sensitive Information and its policies, and had exclusive control to implement safeguards to protect the Sensitive Information. The Blacks relied on Ameriben to safeguard their Sensitive Information. As a result of AmeriBen's failures and inactions, the Blacks' Sensitive Information was disclosed to unauthorized persons

in violation of HIPAA, subjecting them to the risk of medical identity theft. Ameriben cites no Idaho cases to support an argument that businesses that collect, organize, digitize, store, and maintain Sensitive Information have no duty to the owners of the Sensitive Information to take reasonable steps to protect it from unauthorized disclosures.

#### b. The Blacks' Claims Are Not Subject to the Economic Loss Doctrine

Ameriben interprets "economic loss" under Idaho law too broadly. "Economic loss is not simply damages that can be measured monetarily," as Ameriben assumes. *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 244 P.3d 166, 171 (Idaho 2010). In the context of a claim arising out of negligence in the performance of services, the economic loss doctrine does not prevent a plaintiff from recovering for "parasitic injuries" to their person or property as a result of the failure of the defendant to perform services in a workmanlike manner. *Id*. at 173–74. Only if the damage results in loss of profits and benefits under the contract are they considered purely economic loss. *See Aardema v. U.S. Diary Sys., Inc.*, 215 P.3d 505, 511–12 (Idaho 2009).

Here, the Blacks allege that they suffered lost time, anxiety, emotional distress, and loss of privacy. FAC ¶¶ 89–92, 101–104, ER-46, 48. "[T]he value of one's own time needed to set things straight is a loss from an opportunity-cost perspective." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1034 2019 WL 2568799 (N.D. Cal. 2019) (quoting *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828

(7th Cir. 2018)); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1295 2020 WL 2214152 (S.D. Cal. 2020) (lost time responding to the breach and increased anxiety are non-economic damages). Further, the injuries relating to the public disclosure of the Blacks' Sensitive Information is not an economic injury. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (holding that "[p]laintiffs have not alleged merely economic injury. Rather, they have alleged a privacy injury stemming from the unauthorized sharing of their private medical information."). The Blacks plausibly allege that they spent time responding to the Data Breach, and suffered a loss of privacy and anxiety resulting from the Data Breach. These are not economic losses.

In addition, Ameriben had a special relationship with the Blacks, so the economic loss doctrine would not apply. The hallmarks of a special relationship are custody and control. *GSN Cap., LLC v. Shoshone City & Rural Fire Dist.*, 173 Idaho 345, 356 (2024). As the Idaho Supreme Court stated more recently, "the presence of a special relationship ordinarily depends on whether the defendant possessed a superior level of control or knowledge about the risk than the plaintiff." *Oswald v. Costco Wholesale Corp.*, 473 P.3d 809, 819 (Idaho 2020). Whether a special relationship exists is unique to the factual relationship between specific parties. *Aardema*, 215 P.3d at 513.

Here, the FAC adequately pleads that Ameriben and the Blacks were in a special relationship. FAC ¶¶ 124–125, ER-53–54. Ameriben had exclusive control of the Blacks' Sensitive Information. Ameriben was entrusted with the Sensitive Information because Ameriben allegedly had expertise in the administration of health plans, as well as the safe and secure handling of Sensitive Information relating to patients and treatments. Ameriben collected, organized, digitized, and stored the Sensitive Information of many persons, making it a target of identity thieves. Only Ameriben had the ability to protect the Sensitive Information. Under these circumstances, Ameriben possessed a superior level of knowledge and control over the risk of unauthorized disclosure than the Blacks, which is the hallmark of a special relationship under Idaho law. *See Oswald v. Costco Wholesale Corp.,* 473 P.3d 809, 819 (Idaho 2020).

**3. The Blacks' Negligence Per Se Claim Is Well Pled**

Ameriben argues that the FTC Act's prohibition on unfair and deceptive trade practices does not provide clear standards of conduct and therefore cannot form the basis of a negligence per se claim. Ameriben ignores the considerable guidance of the FTC and decisional law promulgated under the FTC Act establishing clear standards. *See e.g.*, *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 257 (3d Cir. 2015). The FTC promulgates numerous guides for businesses that highlight the importance of and provide direction in how to implement reasonable data security

practices. *Id.*; FAC ¶¶ 58, 61–63, 146, ER-35, 38, 58. The FTC and HIPAA regulations set forth clear expectations and standards for complying with their provisions. And Ameriben's transmission of an unsecure email containing thousands of persons' Sensitive Information without authorization undoubtedly violates the basic standards. *See* FAC ¶¶ 60–63, ER-36–39.

The Blacks also plead that they are within the class of persons for whom these statutes were designed to protect. The Blacks are the owners and subjects of the Sensitive Information. The HIPAA notification rule recognizes that the Blacks (as the real parties in interest) must be informed of unauthorized disclosures of their Sensitive Information. 45 C.F.R. 164.403(2).

Ameriben points out that the statutes that form the basis of the Blacks' negligence per se claim do not provide a private right of action. But, the lack of a private right of action under a statute does not foreclose a plaintiff from relying on the statutes to establish negligence per se. *See Yellowstone Log Homes, LLC v. City of Rigby*, 173 Idaho 288, 294 (2023); *see also In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021).

#### 4. The Blacks State a Claim for Breach of Contract

The Blacks allege that Ameriben made enforceable promises in its Privacy Policy to safeguard their Sensitive Information and that these promises were broken in the Data Breach. Courts have recognized that privacy policies and similar privacy

statements can constitute an enforceable express contract. *See, e.g.*, *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 599 (N.D. Ill. 2022) ("This Court finds it sufficient that May alleges that she was offered and accepted the Terms of Use and Privacy Policy upon purchase of Defendants' services or products"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 831 (N.D. Cal 2020) (finding that the "[Terms of Service] and the Privacy Policy are binding agreements"); *Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695, at *6 (D. Kan. Oct. 24, 2007) (rejecting defendant's motion to dismiss argument that a privacy policy could not constitute a contract between the parties).

By obtaining, collecting, and using the Blacks' Sensitive Information, as part of its contractual obligations to administer the Blacks' employee health plan, there was a promise that Ameriben would protect the Blacks' Sensitive Information. FAC ¶¶ 159-162, ER-62–63. AmeriBen breached this promise by failing to protect the Blacks' Sensitive Information. As a result of the Data Breach, the Blacks suffered damage to their privacy interests, and lost the benefit of their bargain when they made premium payments, a portion of which was for adequate and reasonable data security practices. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 27, 2016).

### 5. The Blacks State a Claim for Breach of Implied Contract

"An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and a lawful subject matter." *Northstar Fin. Advisors Inc. v. Schwab Investment*s, 779 F.3d 1036, 1050-51 (9th Cir. 2015) (citation omitted). Defendant argues that there was no mutual intent to form a binding agreement.

Whether mutual assent exists is a question of fact. *Thompson v. Pike*, 838 P.2d 293, 299 (Idaho 1992). Consequently, whether a contract has been formed is also a question of fact for the trier of fact to resolve. *Bettwieser v. N.Y. Irrigation Dist*., 297 P.3d 1134, 1140 (Idaho 2013). Because The Blacks have pled facts that allow the inference that an implied contract exists, the Court should not dismiss the claim.

A meeting of the minds occurred when the Blacks agreed to provide their Sensitive Information to Ameriben in exchange for Ameriben's agreement to protect their Sensitive Information. Ameriben's statements to the public (including to the Blacks) provide more than sufficient factual basis depicting a created expectation that Ameriben would safeguard the Blacks' Sensitive Information. Ameriben breached its promises by failing to protect the Blacks' Sensitive Information and causing the Data Breach. Thus, the Blacks state a claim for breach of implied contract. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig*., 613 F. Supp. 3d 1284, 1297 (S.D. Cal. May 7, 2020)

### 6. The Blacks State a Claim for Breach of Fiduciary Duty

A fiduciary relationship exists in cases where there has been a special confidence placed in another who is bound to act in good faith and with due regard to the interest of one reposing the confidence. *Jones v. Kootenai County Title Ins. Co.*, 873 P.2d 861, 868 (Idaho 1994) (quoting *Stearns v. Williams*, 240 P.2d 833, 840-41 (Idaho 1952)). Whether a fiduciary relationship exists depends upon the actual relationship of the parties.

The Blacks have alleged that Ameriben owed a fiduciary duty to the Blacks. By obtaining, collecting, aggregating, digitizing, organizing, using, and deriving a benefit from the Blacks' Sensitive Information, Ameriben assumed legal duties to the Blacks to take reasonable measures to implement and maintain cybersecurity and data handling practices. Ameriben knew that it was responsible for protecting the Blacks' Sensitive Information from unauthorized disclosure both because it would be an offensive breach of privacy rights to do so and it would create an unreasonable risk of identity theft. This is buttressed by the fact that Ameriben instructed the Blacks in its data breach notification letter to contact *Ameriben* if "anything in your health records or explanation of benefits (EOBs) doesn't look right." This illustrates the trust and confidence the Blacks placed in Ameriben as the only party that could potentially address and correct fraudulent information on their records on their

behalf. FAC ¶ 26, ER-26. Therefore, the Blacks have alleged facts that state a valid claim for breach of fiduciary duty.

#### 7. The Blacks State a Claim for Unjust Enrichment

The Blacks allege that Ameriben gained a benefit from the Blacks' Sensitive Information, which has inherent value, by obtaining business profits from, among other things, using the Sensitive Information to establish partnerships with network providers and vendors. FAC ¶¶ 190–91, ER-67. Under principles of equity, it would be unjust for Ameriben to retain these benefits because it failed to provide proper data security. FAC ¶¶ 192–95, ER-67.

The existence of an express agreement does not in and of itself signify that an action for unjust enrichment cannot be brought. Rather, only when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract. *Wolford v. Tankersley*, 695 P.2d 1201, 1203 (Idaho 1985). Until the Court rules that the parties have an express agreement covering this subject matter, the Court should reject this argument as premature.

#### 8. The Blacks State a Claim Under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

##### a. The FDUTPA applies to the Data Breach with Respect to the Blacks and the Florida Subclass

Ameriben made various false representations concerning its security, fidelity, and ability to safeguard the Blacks' Sensitive Information that constitute an unfair trade practice under FDUTPA, Fla. Stat. §§ 501.201, *et seq*. The statute does not limit its protection to acts occurring exclusively in Florida. *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 2, 2012). Here, the Blacks were and remain in Florida during the relevant actions and inactions. They received all communications from Ameriben that form the basis of their claims while in Florida. The cases Ameriben cites to argue that the FDUTPA does not protect the Blacks from Ameriben's deceptive and unfair acts do not apply to these circumstances because the plaintiffs in these cases were not residents of Florida at all relevant times.

#### b. The Blacks Allege Actual Damages Under the FDUTPA

The Blacks alleged actual damages in the time and effort they spent to protect themselves from the increased risk of identity theft. Some courts—critically *not* the Florida Supreme Court—have concluded that these categories of directly foreseeable damages are not "actual damages," because they are consequential damages. But "the task of this federal court is to predict how the Supreme Court of Florida would resolve the issue presented here." *Orlando Health, Inc. v. HKS Architects, Inc.*, 792 F. Supp. 3d 1298, 1306 (M.D. Fla. 2025). The Florida Supreme Court has no decision on point on the issue.

Under Florida law, the Blacks' damages are remediation and repair damages that qualify as "direct damages," which are those that "naturally and necessarily flow or result from the injuries alleged and may be describe as those damages as may fairly and reasonably be considered as arising in the usual course . . ." *Orlando Health, Inc. v. HKS Architects, Inc.*, 792 F. Supp. 3d 1298, 1303 (M.D. Fla. 2025). Ameriben's Data Breach was the direct cause of the Blacks' remediation efforts. They were reasonably incurred to avoid the potentially catastrophic and long lasting effects of identity theft. Ameriben urged the Blacks to take the very actions they took. Thus, the FDUTPA allows for recovery of their damages. The Blacks also allege loss of the benefit of their bargain and diminished value of the services purchased in reliance on Ameriben's representations regarding data security. Those allegations provide an additional basis for "actual damages" at the pleading stage, independent of the time spent on remediation.

Moreover, the FDUTPA provides for injunctive relief. *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1191 (M.D. Fla. 2022). The Blacks are seeking injunctive relief, and Ameriben does not argue otherwise. FAC ¶ 214, ER-73.

## III. CONCLUSION

The trial court's judgment should be reversed, and this case remanded for further proceedings.

/s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr.
**Zimmerman Law Offices, P.C.**
77 W. Washington Street, Suite 1220
Chicago, IL 60602
(312) 440-0020

Marc E. Dann
Brian D. Flick
Marita I. Ramirez
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539

Bonner C. Walsh (9646)
**Walsh PLLC**
1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

Counsel for Appellants

# CERTIFICATE OF COMPLIANCE

This brief contains 6,489 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Date: February 23, 2026 /s/ Thomas A. Zimmerman, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing documents on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing System.

Date: February 23, 2026 /s/ Thomas A. Zimmerman, Jr.