**No. 25-5952**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

MELISSA BLACK, individually and on behalf of all others similarly situated and MILES BLACK, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

IEC GROUP, INC., doing business as AmeriBen,

*Defendant-Appellee*.

On Appeal from the United States District Court for the District of Idaho
No. 1:23-cv-00384-AKB
Hon. Amanda K. Brailsford

---

# APPELLEE'S PETITION FOR REHEARING EN BANC

Kandi Kilkelly Hidde
Darren A. Craig
FBT GIBBONS LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244
317.237.3800
khidde@fbtgibbons.com
dcraig@fbtgibbons.com

Nicole C. Hancock
Bradley Prowant
STOEL RIVES LLP
101 South Capitol Boulevard
Suite 1900
Boise, ID 83702
208.389.9000
nicole.hancock@stoel.com
bradley.prowant@stoel.com

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form34instructions.pdf*

**9th Cir. Case Number(s)** 25-5952

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

IEC Group Inc., d/b/a Ameriben

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
      (•) Yes ( ) No

      If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

      Elevance Health, Inc., which is publicly traded on the New York Stock Exchange under the symbol ELV.

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
      ( ) Yes (•) No

---

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."
[2] To the extent it can be obtained through due diligence.

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?

   ○ Yes ◉ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

I certify that *(select only one)*:

◉ this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○ the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○ I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** /s/ Nicole C. Hancock **Date** 10/6/2025

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# TABLE OF CONTENTS

Corporate Disclosure Statement ii
Table of Contents iv
Table of Authorities vi
Introduction and Rule 40 Statement 1
Statement of the Issues 3
Statement of the Case 4
Argument 5
I. The panel's holding that a bare breach of contract or confidence is an injury in fact conflicts with *TransUnion*, *Spokeo*, and *Thole*, and splits with the Seventh and Fourth Circuits 5
A. An injury in law is not an injury in fact. 5
B. The Opinion collapses the distinction between injury in fact and injury in law. 6
C. The panel's history does not establish a harm traditionally recognized in American courts. 8
D. *Thole* forecloses the panel's trust-and-contract analogy. 10
E. The decision conflicts with this Court's precedent, including the framework the Court has created for data-breach cases. 11
F. The panel created a conflict with the Seventh and Fourth Circuits 12
II. The panel's breach-of-confidence analogue omits the element of actual disclosure, in conflict with *TransUnion*, *Popa*, and five circuits. 14
A. *TransUnion* requires actual communication of the information to a third party 14
B. The panel's analysis conflicts with *Popa*. 15
C. The decision allows plaintiffs in this Circuit to bypass the publicity requirement applied by five circuits. 15
III. The panel's reliance on HIPAA conflicts with *Spokeo*, *TransUnion*, and *Webb* 16
Conclusion 18
Certificate of Compliance 19
Certificate of Service 20

Addendum: Panel Opinion, Black v. IEC Group, Inc., No. 20-5952 (9th Cir. Oct. 9, 2026), Dkt. 52 .......... 21

## TABLE OF AUTHORITIES

**Cases**

*Abernethy v. Hutchinson*, 47 Eng. Rep. 1313 (Ch. 1825)..................................16

*Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024) . 10, 18, 22, 24

*Corliss v. E.W. Walker Co.*, 64 F. 280 (C.C.D. Mass. 1894)..............................17

*Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445 (5th Cir. 2022) .........................21

*Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023) ... 10, 14, 18, 19, 20, 21

*Duke of Queensberry v. Shebbeare*, 28 Eng. Rep. 924 (Ch. 1758) ...................16

*E.I. du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100 (1917) ..........17

*Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461 (4th Cir. 2025)..... 10, 21

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)...........................................................................................10

*Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024)..........................................................................................20

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) ...............................................................................................................16

*Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018) ..................................25

*Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025)....................... 22, 24

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236 (11th Cir. 2022) .................................................................................................................24

*In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667 (9th Cir. 2025) .................................................................................................................20

*In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) ............................. 10, 20

*Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019)................................22

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)....................... 10, 20

*Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452 (3d Cir. 2024)...............................21

*McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020)................................19

*Morison v. Moat*, 68 Eng. Rep. 492 (Ch. 1851) ...............................................16

*Nabozny v. Optio Sols. LLC*, 84 F.4th 731 (7th Cir. 2023) ................................24

*Perry v. Newsom*, 18 F.4th 622 (9th Cir. 2021) .......................................... 10, 19

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025)............................ 10, 23

*Prince Albert v. Strange*, 41 Eng. Rep. 1171 (Ch. 1849)..................................16

*Shields v. Prof'l Bureau of Collections of Md., Inc.*, 55 F.4th 823 (10th Cir. 2022) ........................................................................................................24

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ......................................... 9, 14, 24

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284 (6th Cir. 2018) ..................................................................................................15

*Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020)..............................................9, 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) . 9, 10, 13, 14, 15, 16, 17, 20, 22, 25

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ..........................................15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982)...........................................................................15

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) .17

*Webb v. Smart Document Sols., LLC*, 499 F.3d 1078 (9th Cir. 2007) ...............25

*Yovatt v. Winyard*, 37 Eng. Rep. 425 (Ch. 1820) ..............................................16

**Statutes**

42 U.S.C. § 1320d-6(a)(3) ...............................................................................25

**Other Authorities**

4 Edward Coke, *Institutes of the Laws of England* (1797 ed.).........................19

Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426 (1982)...............................................................................................17

**Rules**

45 C.F.R. § 164.402 ...................................................................................... 11, 25

45 C.F.R. § 164.404 ...........................................................................................11

## INTRODUCTION AND RULE 40 STATEMENT

This case arises from a misdirected email, not a data breach that anyone is alleged to have exploited. An employee of IEC Group, Inc., d/b/a AmeriBen ("**AmeriBen**"), a third-party administrator for an employer-sponsored health plan, emailed plan members a spreadsheet filtered to display only each recipient's claims data. Excerpts of Record, Dkt. No. 16.1 ("**ER**") 23, 75, 77. Melissa and Miles Black (the "**Blacks**") do not allege that anyone removed the filter, saw their information, or misused it, or that they suffered fraud, identity theft, or out-of-pocket loss. The panel nonetheless found a concrete injury because the alleged harm "resemble[d] a breach of confidence and contract that courts have long understood as providing a basis for a lawsuit," Op. 7, and relied on HIPAA—which creates no private right of action—as evidence that Congress considers health information sensitive. Op. 16–17. It reversed the dismissal of the Amended Complaint. Op. 4 n.1, 17.

Rehearing en banc is warranted under Federal Rule of Appellate Procedure 40(b)(2) for three reasons.

First, the decision conflicts with Supreme Court and Ninth Circuit precedent. *TransUnion*, *Spokeo*, and *Thole* hold that a bare legal violation is not a concrete injury: "under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021); *see also Spokeo, Inc. v. Robins*, 578

U.S. 330 (2016); *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020). The decision also accepts a disclosure-based analogue without actual communication to a third party—the feature that defines the analogous harm, 594 U.S. at 433–34 & n.6—and supplies a "single answer" for every claim and form of relief, Op. 7, contrary to *TransUnion* and *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000). These errors also conflict with this Court's decisions in *Popa*, *Perry*, *Krottner*, and *Zappos*. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025); *Perry v. Newsom*, 18 F.4th 622, 632 (9th Cir. 2021); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010); *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018).

Second, the decision deepens acknowledged circuit conflicts over nationally recurring standing rules. The Seventh and Fourth Circuits reject standing for a contractual breach without actual harm. Op. 15 n.3 (citing *Dinerstein v. Google, LLC*, 73 F.4th 502, 521 (7th Cir. 2023); *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461, 467 (4th Cir. 2025)). The Third Circuit has declined to recognize breach of confidence as a traditionally cognizable harm. *Id.* (citing *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 n.3 (3d Cir. 2024)). And the Third, Fourth, Seventh, Tenth, and Eleventh Circuits require publicity before a disclosure supports standing, Op. 14 n.2—a requirement the panel's theory lets plaintiffs evade.

Third, the questions are exceptionally important. Data-incident class actions are national in scope, and HIPAA requires covered entities and business associates to notify individuals of impermissible disclosures unless they can show a low probability of compromise. 45 C.F.R. §§ 164.402, 164.404. Under the panel's rule, any notice recipient who can identify a promise of confidentiality has Article III standing—even if no one saw the information and no real-world harm followed. En banc review is needed to restore the line between an injury in law and an injury in fact.

## STATEMENT OF THE ISSUES

1. The breach of a legal duty, without more, is an injury in law, not an injury in fact. The Blacks allege that AmeriBen breached a contractual and equitable duty to keep their health-claims data confidential, but allege no misuse, identity theft, or out-of-pocket loss. Is that breach, standing alone, a concrete injury in fact under Article III?

2. A disclosure-based harm is concrete only if the information is actually communicated to a third party, not merely processed. An AmeriBen employee mistakenly emailed one or more plan members a spreadsheet filtered to show each recipient only his or her own claims; no one is alleged to have removed the filter or seen the Blacks' information. Can the Blacks establish standing by analogy to breach of confidence?

3. Congress may elevate concrete harms to legally cognizable injuries, but it cannot enact an injury into existence. HIPAA creates no private right of action and criminalizes only knowing disclosures. Does HIPAA make AmeriBen's inadvertent transmission, which no one is alleged to have accessed, a concrete injury?

## STATEMENT OF THE CASE

AmeriBen is a third-party administrator of the CRH Americas Healthcare Plan, an employer-sponsored plan governed by ERISA. ER-20, 23. In December 2022, an AmeriBen associate emailed a spreadsheet containing part of a claims report to one or more plan members. ER-23, 75, 77. The spreadsheet was filtered to show only the recipient's own information; AmeriBen later learned the filter could be removed. ER-23, 75. In August 2023, AmeriBen notified affected members that their names, unique tracking numbers, provider names, claim numbers, dates of service, and amounts billed or paid "may have been disclosed," ER-22–23 ¶ 11, 77, 79, and that it had no reason to believe anyone had misused or would misuse the data. ER-76.

The Blacks do not allege that anyone removed the filter, viewed their information, or misused it; they allege anxiety, about two hours each reviewing financial records, and a changed password. ER-44, 46. The district court dismissed for lack of standing. ER-2–17.

The panel reversed, holding that "injury in fact turns on the harm a plaintiff has suffered rather than the legal theory he invokes," and that "where every count rests on the same injury, that inquiry yields a single answer." Op. 7. Relying principally on English chancery decisions from 1758 to 1851, it deemed "breach of confidence" a close historical analogue, Op. 7–14, reinforced by "breach of contract," which was available "even without any allegations of pecuniary or physical injury," Op. 15, and "further confirm[ed]" by HIPAA, Op. 16–17. The panel called contrary decisions of the Third, Fourth, and Seventh Circuits "readily distinguishable." Op. 15–16 n.3.

## ARGUMENT

### I. The panel's holding that a bare breach of contract or confidence is an injury in fact conflicts with *TransUnion*, *Spokeo*, and *Thole*, and splits with the Seventh and Fourth Circuits.

#### A. An injury in law is not an injury in fact.

Relying on a historical survey no party briefed, the Opinion rejects *TransUnion*'s core holding: an "injury in law" is not an "injury in fact."

*TransUnion* held that class members whose misleading credit files were never disseminated lacked standing, because "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." 594 U.S. at 434. The Court distinguished "a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law" from "a

plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. Only the latter supports standing, because "under Article III, an injury in law is not an injury in fact." *Id.* at 427.

*Spokeo* likewise held that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." 578 U.S. at 341. Though both cases arose under statutes, they made "broadly applicable statements" about the limits of the judicial power that "apply to all asserted injuries, not just statutory violations." *Dinerstein*, 73 F.4th at 519. The historical-analogue inquiry asks whether a plaintiff has suffered a harm closely related to a traditionally recognized harm—not whether the plaintiff has a cause of action. *TransUnion*, 594 U.S. at 424–25.

### B. The Opinion collapses the distinction between injury in fact and injury in law.

The panel recited *TransUnion*'s framework, then inverted it. It defined the Blacks' alleged "harm" by the elements of their legal theories—a promise of confidentiality, a relationship of trust, and a breach. Op. 7, 15. It reasoned that contract actions were available "even without any allegations of pecuniary or physical injury," Op. 15, and that nominal damages reflect "a historical recognition that a party is harmed by the very act of the breach itself," because "a breach of contract is still a breach, and a trespass still a trespass." Op. 15–16 n.3.

That is the private-rights theory of the *TransUnion* dissent: "courts for centuries held that injury in law to a private right was enough to create a case or controversy." 594 U.S. at 449 (Thomas, J., dissenting).

The majority rejected that theory because it "would reject the core standing principle that a plaintiff must always have suffered a concrete harm" and "would largely outsource Article III to Congress." *Id.* at 430 n.3 (majority opinion). The panel's authorities rest on the same rejected premise. Judge Thapar's concurrence in *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 292–93 (6th Cir. 2018) (Thapar, J., concurring), and contract treatises, Op. 15, all advocating that breach is actionable without proof of damage—the definition of an injury in law.

Nominal damages do not change the analysis. They satisfy redressability "where a plaintiff's claim is based on a completed violation of a legal right," *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021), but "[i]t remains for the plaintiff to establish the other elements of standing," *id.* at 293, including a concrete injury. "The requirements of Art. III are not satisfied merely because a party . . . has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).

### C. The panel's history does not establish a harm traditionally recognized in American courts.

The Opinion rests almost exclusively on pre-1900 authorities, many from England. Yet *TransUnion* asks whether an asserted harm closely relates to harms "traditionally recognized as providing a basis for lawsuits in American courts," and warns that the inquiry is "not an open-ended invitation for federal courts to loosen Article III." 594 U.S. at 424–25.

And the panel's English authorities were suits in equity to prevent threatened, deliberate publication or exploitation: an injunction issued before a manuscript was printed, *Duke of Queensberry v. Shebbeare*, 28 Eng. Rep. 924 (Ch. 1758); a former employee had copied recipes and was selling the medicines, *Yovatt v. Winyard*, 37 Eng. Rep. 425 (Ch. 1820); a journal had printed lectures and intended to print more, *Abernethy v. Hutchinson*, 47 Eng. Rep. 1313 (Ch. 1825); defendants planned a public exhibition, requiring interposition that "must be immediate," *Prince Albert v. Strange*, 41 Eng. Rep. 1171, 1179 (Ch. 1849); and ongoing manufacture and sale were restrained, *Morison v. Moat*, 68 Eng. Rep. 492 (Ch. 1851).

Those remedial details matter, because federal equity jurisdiction reaches only relief "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). These cases are at most an analogue for a plaintiff facing an imminent, deliberate breach and

seeking ***an injunction***—a showing the Blacks never made—not for damages over a completed, inadvertent transmission no one is alleged to have viewed.

The panel obscured that mismatch by declaring that the standing inquiry "yields a single answer." Op. 7. But a plaintiff must "demonstrate standing separately for each form of relief sought," and in a damages suit a mere risk of future harm is not concrete unless exposure to that risk itself causes a separate concrete harm. *TransUnion*, 594 U.S. at 436–37.

Nor did the panel identify a founding-era American tradition. *Vermont Agency*, Op. 14, examined a practice "as prevalent in America as in England" in "the period immediately before and after the framing." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 776 (2000). The panel's American cases date from 1894 to 1917 and involved intentional misuse or, in *Corliss*, an injunction later dissolved. *E.g.*, *E.I. du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 102 (1917); *Corliss v. E.W. Walker Co.*, 64 F. 280, 282–83 (C.C.D. Mass. 1894).

The panel's own secondary source describes the American personal breach-of-confidence action as having "died out in its infancy" and as still "rudimentary" and "emerging" in 1982. Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1426, 1451, 1454 (1982). The Third Circuit therefore "hesitate[d] to conclude" that breach of confidence is a

traditionally recognized harm, *Barclift*, 93 F.4th at 145 n.3, and the panel's adoption of the *Barclift* dissent's view creates another circuit split. Op. 15 n.3.

In short, the panel's history identifies no harm traditionally recognized in American courts that resembles an inadvertent transmission no one is alleged to have seen.

### D. *Thole* forecloses the panel's trust-and-contract analogy.

*Thole* confirms the conflict. There, ERISA plan participants alleged breaches of fiduciary duties of trust. The Court rejected their trust-law analogy, explained that a defined-benefit plan "is more in the nature of a contract," and held they lacked standing absent concrete harm. 590 U.S. at 542–43. It did so over a dissent arguing that a "breach of contract always creates a right of action, even when no financial harm was caused." *Id.* at 561 (Sotomayor, J., dissenting); *see Dinerstein*, 73 F.4th at 520 n.5. The Seventh Circuit thus read *Thole* "to imply that an alleged breach of contract, without any corresponding actual harm, does not give rise to an Article III case or controversy." *Id.* at 520.

The panel's analogy—a "relationship of trust and confidence . . . often formed by contract," Op. 15—is the trust-and-contract theory *Thole* rejected, here asserted by participants in an ERISA plan. Even the panel's starting point, Coke's "ancient rule," Op. 8, concerned "breach of trust and confidence" in trusts of land, illustrated by manors granted "upon confidence" that the grantees would convey

them to others. 4 Edward Coke, *Institutes of the Laws of England* 84–85 (1797 ed.).

### E. The decision conflicts with this Court's precedent, including the framework the Court has created for data-breach cases.

The Opinion also conflicts with this Court's precedent. *First*, *Perry* held that "[a]n analogy to a traditionally recognized cause of action does not relieve a complainant of its burden to demonstrate an injury," and rejected standing premised on the alleged breach of a judicial "promise" analogized to a contract. 18 F.4th at 632. The Seventh Circuit reads *Perry* as aligned with its own rule. *Dinerstein*, 73 F.4th at 522.

*Second*, under *McGee*, a plaintiff invoking a benefit-of-the-bargain theory "must show that she did not receive a benefit for which she actually bargained," not merely that her expectations went unmet. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). The Blacks pleaded that theory, ER-22, 45, 47, 63, but the panel did not hold that they satisfied *McGee*; it treated the breach itself as the injury. That rule renders *McGee* meaningless whenever a plaintiff pleads a contract—implied, quasi, or otherwise.

*Third*, the decision displaces this Court's data-breach framework. *Krottner*, Op. 5, and *Zappos* found standing for plaintiffs "whose personal information has been stolen but not misused" because the theft—of a laptop in *Krottner*, by hackers in *Zappos*—created "a credible threat of harm" that was "both real and

immediate." *Krottner*, 628 F.3d at 1140, 1143; *Zappos*, 888 F.3d at 1027–29. Though *Krottner* was a breach-of-implied-contract case, this Court looked to the threat created by the theft, not to the breach. 628 F.3d at 1140–43.

Applying that framework, this Court held that plaintiffs alleging only that their information was "exposed" had not alleged theft, because an "exposed" driver's license number "is different from a 'stolen' one." *Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977, at *1–2 (9th Cir. Aug. 21, 2024) (mem.). Since *TransUnion*, "Article III standing can be an uphill battle for data-breach plaintiffs, who must allege a 'concrete harm,' not just an 'asserted risk of future harm.'" *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 437). The panel's rule makes that inquiry superfluous whenever a plaintiff pleads a promise of confidentiality.

### F. The panel created a conflict with the Seventh and Fourth Circuits.

The Seventh Circuit held that a patient whose anonymized medical records were shared with a research partner, allegedly in violation of a Notice of Privacy Practices and admission agreement, lacked standing to sue for breach of contract, because the breach "is at most an injury in law, which we know from *TransUnion* 'is not an injury in fact.'" *Dinerstein*, 73 F.4th at 519. Common-law courts' historical willingness to award nominal damages did not change the result, because

the historical-analogue test "does not . . . transform into a concrete factual injury what the common law has historically regarded as a legal injury." *Id.* at 521.

The Fourth Circuit likewise held that a plaintiff who alleged a breach of her insurance contract but could not show harm lacked standing. *Freeman*, 149 F.4th at 467–68; *see also Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452, 460 (3d Cir. 2024) (rejecting a breach-of-contract theory that "would impermissibly divorce [plaintiffs'] standing to sue from any real-world financial injury"). Only the Fifth Circuit has held that "a breach of contract is a sufficient injury for standing purposes," *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022)—a decision that "did not engage with the logic of *Spokeo* and *TransUnion*." *Dinerstein*, 73 F.4th at 522.

The panel cited *Denning* with approval, Op. 15–16 n.3, and distinguished *Dinerstein* as not involving "a breach of confidentiality grounded in contractual promises to keep sensitive HIPAA-protected health information private." Op. 16 n.3. But *Dinerstein* presented that claim: a hospital's alleged breach of contractual confidentiality obligations arising from a Notice of Privacy Practices, through the transfer of patient health records. 73 F.4th at 508–09, 516. The circuits are thus divided on whether breach of a contractual promise to keep health information confidential is, without more, an Article III injury. The full Court should not leave this Circuit on the wrong side of that divide.

## II. The panel's breach-of-confidence analogue omits the element of actual disclosure, in conflict with *TransUnion*, *Popa*, and five circuits.

### A. *TransUnion* requires actual communication of the information to a third party.

*TransUnion* held that undisclosed inaccuracies in internal credit files cause "no concrete harm," 594 U.S. at 434, and rejected the theory that internal handling and transmission to vendors sufficed. Even the cases plaintiffs cited required evidence that the defendant actually "brought an idea to the perception of another," and thus "generally require evidence that the document was actually read and not merely processed." *Id.* at 434 n.6. A theory that "circumvents a fundamental requirement" of the analogous tort "does not bear a sufficiently 'close relationship'" to support standing. *Id.*

Breach of confidence has the same essential feature: as the panel's own definition recognizes, it requires "disclosure to a third party." Op. 7 (quoting *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019)). The Third Circuit has thus held that the analogy fails "absent third-party disclosure." *Kamal*, 918 F.3d at 118. Whether the comparison focuses on elements or harms, disclosure matters because it "helped define the harm." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 422 (4th Cir. 2025); *see Barclift*, 93 F.4th at 145 n.4.

Yet the Blacks alleged only that their information "may have been disclosed" in a spreadsheet filtered to display the recipient's own data. ER-22–23 ¶

11, 75, 77. They did not allege that anyone removed the filter or saw their information. The panel *never* mentioned the filter, declaring simply that "no one can dispute that Defendant failed to keep this information secret." Op. 7. Under *TransUnion*, information sitting unseen behind a filter in a recipient's inbox is no different, "legally speaking," from a defamatory letter stored in a desk drawer. 594 U.S. at 434. The panel's analogue omits the very element that made the historical action a harm.

### B. The panel's analysis conflicts with *Popa*.

*Popa* explained that "*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort," and held that the plaintiff had not met her burden. 153 F.4th at 791. Rather than examine what the Blacks alleged was disclosed, and to whom, the panel reasoned from unalleged hypotheticals—a patient seeing a psychiatrist daily or visiting a fertility clinic. Op. 17. Generalized assumptions about what health data "can reveal" do not show that the Blacks suffered a harm comparable to a betrayed confidence.

### C. The decision allows plaintiffs in this Circuit to bypass the publicity requirement applied by five circuits.

The panel acknowledged that the Third, Fourth, Seventh, Tenth, and Eleventh (en banc) Circuits require publicity or its equivalent before an unauthorized disclosure is analogous to the public-disclosure tort. Op. 14 n.2

(citing *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022) (en banc); *Shields v. Prof'l Bureau of Collections of Md., Inc.*, 55 F.4th 823, 828–29 (10th Cir. 2022); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023); *Barclift*, 93 F.4th at 145 & n.4; *Holmes*, 156 F.4th at 425). It purported not to take sides. Op. 15 n.2. But by recognizing a "breach of confidence" analogue requiring no publicity—and, here, no confirmed disclosure at all—the panel lets a plaintiff who would be dismissed in five circuits proceed in this one.

*Hunstein*, for example, held that disclosure to a mail vendor's employees "circumvents a fundamental requirement" of the privacy tort under *TransUnion*. 48 F.4th at 1251. Under the panel's rule, a plaintiff need only relabel the same facts a breach of confidence. The full Court should eliminate that path.

## III. The panel's reliance on HIPAA conflicts with *Spokeo*, *TransUnion*, and *Webb*.

The Opinion purports to find confirmation in the Health Insurance Portability and Accountability Act (HIPAA). Op. 16. But HIPAA undermines the panel's theory.

Because Congress "is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important," and Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Spokeo*, 578 U.S. at 341.

But the congressional judgment reflected in HIPAA points the other way. HIPAA creates no private right of action. *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). Congress committed enforcement to the Executive Branch and imposed criminal liability only for "knowingly" disclosing individually identifiable health information. 42 U.S.C. § 1320d-6(a)(3); *see* Op. 16.

Even had Congress created a private right of action, it "may not simply enact an injury into existence." *TransUnion*, 594 U.S. at 426 (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)). This incident was inadvertent. Treating HIPAA as a basis for private standing disregards *TransUnion*'s warning that private plaintiffs "are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law." *Id.* at 429.

HIPAA's breach-notification rule presumes that an impermissible disclosure is a reportable breach unless the covered entity or business associate demonstrates a low probability of compromise. 45 C.F.R. § 164.402. Notice thus issues in many cases, like this one, in which no one is known to have viewed the information. Under the panel's decision, every recipient who can point to a promise of confidentiality may sue—penalizing the transparency federal law encourages.

Nor is the decision limited to health information. Banks, insurers, and employers routinely promise confidentiality; if breach of that promise is itself a

concrete injury, federal courts in this Circuit will hear suits over any mishandled record, regardless of whether anyone suffered financial or reputational harm.

Finally, uniformity matters. Data-incident suits are routinely filed as nationwide class actions, so when the Seventh Circuit dismisses a contract-based health-privacy claim that this Circuit sustains, access to federal court turns on where the complaint is filed.

## CONCLUSION

The Court should grant rehearing en banc, vacate the panel opinion, and affirm the district court's judgment dismissing the First Amended Complaint.

By: *<u>/s/Darren A. Craig</u>*

Kandi Kilkelly Hidde
Darren A. Craig
FBT GIBBONS LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
Email: khidde@fbtgibbons.com
dcraig@fbtgibbons.com

Nicole C. Hancock
Bradley Prowant
STOEL RIVES LLP
101 S. Capitol Blvd, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

Email: nicole.hancock@stoel.com
bradley.prowant@stoel.com

Attorneys for Appellee
IEC Group, Inc., d/b/a AmeriBen

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Circuit Rule 40-1 and Fed. R. App. P. 40 that this petition for rehearing en banc is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)–(6) and contains 4,043 words.

October 23, 2026

*/s/Darren A. Craig*
Darren A. Craig

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on October 23, 2026. All participants in the case are registered ACMS users, and service will be accomplished by the appellate ACMS system.

October 23, 2026

*/s/Darren A. Craig*
Darren A. Craig

## ADDENDUM: PANEL OPINION, BLACK V. IEC GROUP, INC., NO. 20-5952 (9TH CIR. OCT. 9, 2026), DKT. 52

The panel's published opinion filed October 9, 2026 (Dkt. 52) is attached to this petition as required by Circuit Rule 40-1 and Fed. R. App. P. 40(b)(3).

0131135.0776858 4923-6087-6248v2

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MELISSA BLACK, individually and on behalf of all others similarly situated; MILES BLACK, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs - Appellants*,<br><br>v.<br><br>IEC GROUP, INC., doing business as Ameriben,<br><br>*Defendant - Appellee*. | No. 25-5952<br><br>D.C. No. 1:23-cv-00384-AKB<br><br>OPINION |

Appeal from the United States District Court
for the District of Idaho
Amanda K. Brailsford, District Judge, Presiding

Argued and Submitted June 8, 2026
Seattle, Washington

Filed October 9, 2026

Before: Michael Daly Hawkins, William A. Fletcher, and Eric C. Tung, Circuit Judges.

Opinion by Judge Tung

## SUMMARY*

### Article III Standing

The panel reversed the district court's judgment dismissing for lack of subject matter jurisdiction an action alleging that IEC Group, Inc. disclosed confidential health information without authorization.

Plaintiffs receive health insurance from a plan administered by IEC Group, which sent each Plaintiff a letter informing them that some of their information was disclosed to unauthorized parties. Plaintiffs brought a class action alleging several state-law claims. The district court concluded that Plaintiffs did not suffer an injury in fact and thus did not have Article III standing.

The panel held that Plaintiffs alleged an injury enough to give them standing. The harm Plaintiffs alleged—the unauthorized disclosure of sensitive facts about their health that they entrusted Defendant to keep private—is akin to a breach of confidence or contract that courts have traditionally recognized as providing a basis for a lawsuit. Accordingly, the panel reversed the district court's judgment and remanded for further proceedings.

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jeff Blake (argued), Zimmerman Law Offices PC, Willowbrook, Illinois; Thomas A. Zimmerman Jr., Zimmerman Law Offices PC, Chicago, Illinois; Bonner C. Walsh, Walsh PLLC, Grangeville, Idaho; Marc E. Dann, Brian D. Flick, and Marita I. Ramirez, Dann Law Firm, Lakewood, Ohio; for Plaintiffs-Appellants.

Darren A. Craig (argued) and Kandi K. Hidde, FBT Gibbons LLP, Indianapolis, Indiana; Nicole C. Hancock and Bradley R. Prowant, Stoel Rives LLP, Boise, Idaho; for Defendant-Appellee.

---

## OPINION

TUNG, Circuit Judge:

If you entrust a company to keep your sensitive health information private, but the company then discloses that information to others without your consent, have you been injured? We hold yes. The district court concluded such harm did not constitute "injury in fact" sufficient to confer Article III standing. We reverse.

### I

Plaintiffs-Appellants Miles and Melissa Black receive health insurance from a plan administered by Defendant-Appellee IEC Group, Inc. (doing business as AmeriBen). In August 2023, Defendant sent each Plaintiff a letter informing them that some of their information was disclosed to unauthorized parties. ER-77–80. The letter explained that

Case: 25-5952, 10/29/2025, DktEntry: 37.1, (32 of 45)



an associate emailed a spreadsheet containing Plaintiffs' sensitive health information to "one or more [plan] members." ER-77. The information that "may have been disclosed" included (1) first and last names, (2) unique tracking numbers, (3) provider names, (4) claim numbers, (5) dates of service, and (6) the amounts billed or paid. ER-22–23 ¶ 11, 77, 79. Plaintiffs allege that "the full extent of the types of Sensitive Information, the scope of the breach, and the root cause of the breach is all within the exclusive control of the Defendant," ER-21 ¶ 7, and that Defendant "has not been forthright with information about the Breach," ER-46 ¶ 90, 48 ¶ 102.

Plaintiffs brought a class action against Defendant in the United States District Court for the District of Idaho for several state-law claims.[1] ER-20–21. Plaintiffs allege that they entrusted their sensitive health information to Defendant as a condition of their plan administration, ER-45, 47, and that Defendant expressly and impliedly promised—including through its Privacy Policy—to keep that information confidential and not disclose it to any third party without their consent, and to use reasonable methods to prevent such disclosure, ER-22, 62. Plaintiffs allege that they provided their information in reliance on that promise and on a reasonable expectation of confidentiality, and that they would not have entrusted it to Defendant absent such an agreement. ER-22, 65. Defendant breached those promises, they allege, when it disclosed their confidential information without authorization, depriving Plaintiffs of the benefit of

[1] Plaintiffs brought state-law claims of (1) Negligence, (2) Negligence Per Se, (3) Breach of Contract, (4) Breach of Implied Contract, (5) Breach of Fiduciary Duty, (6) Unjust Enrichment, (7) Declaratory and Injunctive Relief, and (8) a claim under Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*). ER-52–68.

their bargain and rendering the services they contracted for of diminished value. ER-45, 47, 63.

The district court granted Defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction because it concluded that the Plaintiffs did not suffer an injury in fact and thus did not have Article III standing. ER-4, 18. The district court rejected Plaintiffs' arguments that unauthorized disclosure of private information alone or the loss of the benefit of their bargain could satisfy the injury-in-fact requirement for standing. ER-9, 11–12. Instead, it interpreted Ninth Circuit caselaw as "support[ing] a narrower rule." ER-12. "[T]o allege a concrete injury from disclosure of personal information, a plaintiff must show the nature of the information disclosed, the context of the disclosure, and other alleged injuries associated with the disclosure demonstrate an imminent and substantial injury." *Id.* (citing *Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977, at *1 (9th Cir. 2024)). The court concluded that Plaintiffs did not meet that standard and thus did not demonstrate a substantial likelihood of future injury. ER-13–18.

Plaintiffs then appealed to this court. "We review a district court's dismissal under Rule 12(b)(1) for lack of standing de novo." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1209 (9th Cir. 2022). "On appeal from a motion to dismiss, a plaintiff need only show that the facts alleged, if proven, would confer standing." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010).

## II

Our "judicial Power" extends only to "Cases" and "Controversies." U.S. Const., art. III, § 2. To ensure we keep to our proper role, we have applied the doctrine of

standing, which requires plaintiffs to have "suffered an injury in fact" that is fairly traceable to the challenged conduct and that is likely to be redressed by the court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This doctrine is "rooted in the traditional understanding of a case or controversy" and "limits the category of litigants empowered to maintain a lawsuit in federal court." *Id.*

History remains our guide in determining whether a plaintiff has standing. "Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged . . . harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 340–41 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). As Justice Frankfurter put it, "[j]udicial power" comes into play "in matters that were the traditional concern of the courts at Westminster." *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424.

An "exact duplicate" is not needed. *Id.* But the inquiry is "not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. at 424–25. Tangible harms, such as physical harm or monetary loss, satisfy the "injury in fact" requirement; but intangible harms can too, if they have been "traditionally recognized" by courts as providing a basis for a lawsuit, such as "reputational harms" or "harms specified by the Constitution

Case: 25-5952, 10/29/2026, DktEntry: 37.1, (35 of 45)



itself"—*e.g.*, "abridgment of free speech" or "infringement of free exercise." *Id.* at 425. Congress's "judgment is also instructive and important," as that body is "well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 578 U.S. at 341.

## III

Plaintiffs have alleged an injury here enough to give them standing. Standing must of course be shown claim by claim and is not "dispensed in gross," *TransUnion*, 594 U.S. at 431, but injury in fact turns on the harm a plaintiff has suffered rather than the legal theory he invokes to redress it, and where every count rests on the same injury, that inquiry yields a single answer. The harm Plaintiffs allege consists of the unauthorized disclosure of sensitive facts about their health that they have entrusted Defendant to keep private. No one can dispute (at this stage of the litigation anyway) that the disclosed information—about when Plaintiffs received health treatment, how much they (or their insurer) spent on that treatment, and which providers they saw—is sensitive to Plaintiffs. Nor can anyone dispute that Defendant promised Plaintiffs to keep this information secret—information Defendant learned while administering Plaintiffs' insurance claims. And no one can dispute that Defendant failed to keep this information secret. The harm that Plaintiffs allege from this disclosure resembles a breach of confidence and contract that courts have long understood as providing a basis for a lawsuit.

Consider first a breach of confidence. Under this action, a defendant is liable for "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship."

*Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (quotation omitted).

The "ancient rule" of equity denoted "breach of confidence" as one of three express bases for invoking a court's jurisdiction. *See* 4 Edward Coke, Institutes of the Laws of England 84 (London, M. Flesher 1644) ("For this Court of Equity the ancient rule is good. Three things are to be judged in Court of Conscience: Covin, Accident, and breach of confidence."). A series of seminal English cases decided around the time of our Founding illustrates the action's historical pedigree. *See* Neil M. Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law of Confidentiality*, 96 Geo. L.J. 123, 135–38 (2007). In *Duke of Queensberry v. Shebbeare*, the Court of Chancery enjoined the publication of a manuscript, belonging to the Earl of Clarendon, which was given to an individual with the understanding that it not be printed and shared. 28 Eng. Rep. 924, 925 (Ch. 1758). This case reflected "liab[ility] to be restrained," as one later authority taught, for "deriv[ing] confidential information in breach of confidence," though the case had not used those express terms. *See* Francis Gurry, *Breach of Confidence* 278 (1984).

The court was more explicit in *Yovatt v. Winyard*, in which it enjoined an employee's use of secret "recipes for veterinary medicines" that the employee had copied in "breach of trust and confidence" owed to his employer. 37 Eng. Rep. 425, 425–426 (Ch. 1820). Similarly, in *Abernethy v. Hutchinson*, the court enjoined individuals from publishing notes of lectures kept by a medical student attending the lectures because the initial disclosure by the student was either a "breach of trust" or a violation of an implied contract. 47 Eng. Rep. 1313, 1316 (Ch. 1825) (citing *Duke of Queensberry*, 28 Eng. Rep. at 924).

Later cases confirmed that breach of confidence was actionable apart from any property or copyright interest. In *Prince Albert v. Strange*, the court enjoined the exhibition of etchings of the royal family (and publication of a catalogue describing those etchings) when the defendant's possession of them "must have originated in a breach of trust, confidence, or contract." 41 Eng. Rep. 1171, 1179 (Ch. 1849). "[T]his case by no means depends solely upon the question of property," the court emphasized, "for a breach of trust, confidence, or contract, would of itself entitle the Plaintiff to an injunction." *Id.* at 1178.

In *Morison v. Moat*, the court reaffirmed the principle, recognizing that equity would restrain individuals from disclosing information they obtained in confidence. 68 Eng. Rep. 492, 501 (Ch. 1851). There, the court enjoined the "use of a secret in the compounding of a medicine" where the defendant acquired "the secret" in "breach of trust and confidence." *Id.* at 492. "That the Court has exercised jurisdiction in cases of this nature *does not*," the Vice-Chancellor said, "admit of any question." *Id.* at 498 (emphasis added). The court noted that the "grounds" for "jurisdiction" referred to "property" in some cases and "contract" in others; and in still other cases, "it has been treated as *founded upon trust or confidence*, meaning, as [the Vice-Chancellor] conceive[d], that the Court fastens the obligation on the conscience of the party, and enforces it against him in the same manner as it enforces against a party to whom a benefit is given the obligation of performing a promise on the faith of which the benefit has been conferred." *Id.* (emphasis added). "[B]ut, upon whatever grounds the jurisdiction is founded," the court concluded, "the authorities leave no doubt as to the exercise of it." *Id.*

The authorities that the court in *Morison* surveyed include those already discussed (*Duke of Queensberry*, *Yovatt*, *Abernethy*, *Prince Albert*). *See id.* at 499. As the court emphasized, those cases based jurisdiction upon the "ground of breach of trust and confidence." *Id.* "By those authorities, in which I most fully concur," the Vice-Chancellor stated, "and which appear to me to agree in principle with many other cases to be found in the books, I must hold myself to be bound." *Id.* Again, the court took pains to emphasize that the "principle" rested not on a violation of a "property" right, but on a "breach of confidence": indeed, the defendant in *Morison* had argued that "granting an injunction" would "give the Plaintiffs a better right than that of a patentee." *Id.* at 500. But the court rejected that argument, reasoning that "what we have to deal with here is, *not* the right of the Plaintiffs against the world" (as a patent would give), "but their right against the Defendant," who had committed a breach of confidence. *Id.* (emphasis added). Buttressing that reasoning, the court distinguished *Morison* from a patent case in which the latter "did not depend upon any breach of confidence, for there was no confidence reposed, but depended wholly on a supposed right of property in the medicine." *Id.*

These English authorities were well known across the Atlantic. Joseph Story, in his "famous treatise" on equity jurisprudence (*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321 (1999)), cited *Yovat* among other cases when he described how "Courts of Equity will restrain a party from making a disclosure of secrets, communicated to him in the course of a confidential employment." 2 Commentaries on Equity Jurisprudence § 952, at 223 (Boston, Charles C. Little & James Brown 1839). Story disabused the reader of any notion that he was

speaking solely about trade secrets; the wrong in these cases pertained to a breach of faith or contract: "it matters not," he said, "whether the secrets be secrets of trade, or secrets of title, or other secrets of the party important to his interests." *Id.* In a later edition, the treatise cited *Morison v. Moat* and recognized that "a party has been restrained from using a secret . . . in breach of faith or contract." 2 Commentaries on Equity Jurisprudence § 952, at 296 (Boston, Little, Brown & Co. 1853); *see also Evitt v. Price*, 57 Eng. Rep. 659 (Ch. 1827); *Pollard v. Photographic Co.*, 40 Ch. Div. 345 (1888).

American courts followed suit. In *E.I. Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100 (1917), Justice Holmes, writing for a unanimous Supreme Court, described the harm that a breach of confidence effects and explained that such harm provided the basis for the court's ability to entertain the case and grant relief:

> Whether the plaintiffs have any valuable secret or not[,] the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. Therefore[,] the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations. If there is any disadvantage in the fact that he knew the

> plaintiffs' secrets, he must take the burden with the good.

*Id.* at 102 (reversing a decree that had vacated a preliminary injunction).

In short: a trust betrayed *is* the harm. Beyond concerns of "property" or "due process," the "hostility" made upon the relationship itself, the "abuse" of the "trust reposed" in another, is itself the harm. Other cases adhered to this principle. For example, in *Corliss v. E.W. Walker Co.*, 64 F. 280 (C.C.D. Mass. 1894), the court had "granted an injunction upon the ground that the proposed use [of a photograph of a famous inventor] by the defendants would be a breach of contract and *a violation of confidence*." *Id.* at 281 (emphasis added). It addressed "a personal right" belonging to the plaintiff, citing *Duke of Queensberry*, *Abernethy*, and *Prince Albert*. *Id.* at 282. The court later dissolved the injunction upon learning that the defendants obtained the photograph "at a public shop in Providence"—hence there was no "contract" between the parties; nor was confidence reposed in defendants to keep the photograph private. *Id.* at 282–83. The central point, however, is this: a breach of confidence was traditionally recognized as a basis for a lawsuit.

Similarly, in *Stevens & Co. v. Stiles*, 71 A. 802 (R.I. 1909), the court affirmed the grant of a preliminary injunction to restrain an employee who had, "from breach of trust or confidence arising from the confidential relation" with his employer, sought to use the company's "books and records" to solicit customers for his own business. *Id.* at 802, 806. The court articulated the historical recognition by English courts of relief granted upon a "breach of confidence," citing *Morison*, *Yovatt*, *Abernethy*, and *Prince*

*Albert* (among other cases), as well as Story's treatise, and it acknowledged that "[t]he same doctrine prevails in this country." *Id.* at 803–05.

The court in *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68 (Ga. 1905), understood this too: "It is well settled that, if any contract or property right *or trust relation* has been violated, damages are recoverable. There are many cases which sustain such a doctrine." *Id.* at 75 (emphasis added). The plaintiff in *Pavesich* had sued an insurance company for using a photograph of him in an advertisement for life insurance, alleging a "trespass upon plaintiff's right of privacy . . . caused by breach of confidence and trust reposed" in the defendant. *Id.* at 69. The court recognized that "breach of confidence" was a harm more established than the alleged invasion of "privacy"—two harms that the plaintiff had blended in his pleadings. *Id.* at 75. Invoking a recently published article at the time by Samuel Warren and Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890), the court found that the plaintiff's "right to privacy" was violated. *See Pavesich*, 50 S.E. at 74, 81.

The novelty of finding such a "privacy" right only reinforced the settled nature of (the narrower) "breach of confidence" action. As the court acknowledged, "[i]t is to be conceded that prior to 1890 every adjudicated case, both in this country and in England, which might be said to have involved a right of privacy, was not based upon the existence of such right, but was founded upon a supposed right of property, or *a breach of trust or confidence*, or the like." *Id.* at 69 (emphasis added).

To be sure, the *Pavesich* case (and others) marked the advent of the privacy tort, established in our law today to the point where "breach of confidence" has nearly been eclipsed

(though it appears more recently to have made a comeback). *See* Richards & Solove, *Privacy's Other Path*, at 146–56; Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1428–30 (1982). None of this is all too surprising: in many cases a plaintiff would have no need to invoke a narrower "breach of confidence" theory of liability when it has resort to a broader theory of "privacy," which does not depend on the existence of (and thus proof of) a relationship of confidence and trust between the parties.

But whether "breach of confidence" has been overshadowed today is beside the point. The point is that, around our Constitution's framing, "breach of confidence" provided a basis for a suit in English or American courts; and that is enough for us to conclude that it serves as a "close historical or common-law analogue for [Plaintiffs'] asserted injury" to allege standing under Article III. *TransUnion*, 594 U.S. at 424; *see also Vt. Agency*, 529 U.S. at 776 (examining "the period immediately before and after the framing of the Constitution").[2]

[2] The Supreme Court in *TransUnion* observed that "disclosure of private information" is a harm "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425. That could potentially provide another basis for standing here, but we need not decide that today. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 790–91 (9th Cir. 2025). We note that our sister circuits have apparently adopted different approaches as to whether the tort's element of "publicity" needs to be alleged in order to demonstrate standing. *Compare Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022) (en banc); *Shields v. Prof. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 828–29 (10th Cir. 2022); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 & n.4 (3d Cir. 2024); *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 425 (4th Cir. 2025), *with Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1230–31 (D.C. Cir. 2025); *Salazar v. Paramount*

"Breach of contract" reinforces the validity of the analogy we draw today. A relationship of trust and confidence is often formed by contract or an implied promise. And so where there is a "breach of confidence," there often is a "breach of contract" too, as the historical cases recognized. *See supra* at 9–11. And here Plaintiffs have alleged a confidential relationship grounded in promises made by Defendant and a breach of those promises. ER-22 ¶ 10, 23 ¶ 14, 63 ¶ 164. No one can doubt that actions for breach of contract, even without any allegations of pecuniary or physical injury, were available at common law. *See* Joseph Chitty, A Treatise on the Law of Contracts 978 (Springfield, Mass., G. & C. Merriam 1860); William T. Brantly, Law of Contract 247–48 (Baltimore, Harold B. Scrimger 1893); *see also, e.g.*, *Cowley v. Davidson*, 13 Minn. 92, 104–05 (1868); *Devendorf v. Wert*, 42 Barb. 227, 229 (N.Y. Sup. Ct. 1864). And that pedigree combined with the historical recognition of the "breach of confidence" action in equity make clear that Plaintiffs have standing here at least at this stage of the pleadings.[3]

*Glob.*, 133 F.4th 642, 647 n.4, 648 n.6 (6th Cir. 2025); *Salazar v. NBA*, 118 F.4th 533, 542 n.6 (2d Cir. 2024). Because we hold that "breach of confidence" provides a basis for standing here, we need not decide whether "disclosure of private information" does too.

[3] We note that the Third Circuit has "hesitate[d] to conclude" that "breach of confidence" was traditionally recognized as providing a basis for a suit. *Barclift*, 93 F.4th at 145 n.3. But as the authorities discussed in our opinion show, "breach of confidence" is anything but new. *See supra* at 8–12; *see also Barclift*, 93 F.4th at 157 & n.13 (Matey, J., concurring in part, dissenting in part, and dissenting in the judgment). We also note that the Seventh and Fourth Circuits have questioned whether a "breach of contract" can give rise to standing when damages are merely nominal. *Dinerstein v. Google*, 73 F.4th 502, 521 (7th Cir. 2023); *see also Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461,

Congressional judgment further confirms that the disclosure of this information is a concrete injury. *Spokeo*, 578 U.S. at 341; *TransUnion*, 594 U.S. at 425. Congress passed the Health Insurance Portability and Accountability Act (HIPAA) and subsequent amendments to protect certain sensitive health information from disclosure. While the Act does not provide a private cause of action, it does prohibit disclosure, and even provides for criminal liability for, under certain conditions, knowingly "disclos[ing] individually identifiable health information to another person." 42 U.S.C. § 1320d-6(a)(3). No one appears to dispute that the information disclosed here was covered by the Act. *See* 42 U.S.C. § 1320d(6) (defining "individually identifiable health information"). However mundane such disclosed data might seem to some—*e.g.*, the patient's name, the provider's name, the dates of service, the amounts billed—Congress made a judgment that such information was sensitive enough to entitle it to statutory protection. And it is not hard to see

467 (4th Cir. 2025). But it appears to us that nominal damages are a historical recognition that a party is harmed by the very act of the breach itself even when no pecuniary damage accompanies such breach—in that vein, it is very much like a trespass resulting from an intruder placing merely one foot on the owner's property without causing any physical harm to the property; no matter how little, a breach of contract is still a breach, and a trespass still a trespass. *See* Thomas M. Cooley, A Treatise on the Law of Torts 63 (Chicago, Callaghan & Co. 1879); Theodore Sedgwick, A Treatise on the Measure of Damages 57–58 (New York, Baker, Voorhis & Co. 1874); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 292–93 (6th Cir. 2018) (Thapar, J., concurring); *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022). In any event, the Third, Seventh, and Fourth Circuits did not have occasion to address the particular allegations at issue here—a breach of confidentiality grounded in contractual promises to keep sensitive HIPAA-protected health information private—and so those cases are readily distinguishable.

why. Such information, no matter how seemingly benign, can reveal one's most private health concerns—for example, others might learn that a patient is suffering from a debilitating mental illness because he has been seeing a psychiatrist for daily therapy sessions for the past three months, or that a patient is struggling with infertility given the amount of time spent at a fertility clinic. Disclosure of such sensitive information resulting from a breach of trust is a harm.

* * *

The Supreme Court has instructed that a plaintiff, bearing the burden to show standing, must identify a close historical analogue for their claimed injury. Plaintiffs have done so here. Their allegation that Defendant disclosed sensitive health information that Plaintiffs entrusted Defendant to keep private is akin to a breach of confidence or contract that English and American courts have traditionally recognized as providing a basis for a lawsuit. We therefore reverse the district court's judgment to the contrary and remand for further proceedings.

**REVERSED AND REMANDED.**